HELEN BLOECHER v. ESTATE OF WILLIAM DUERBECK, Appellant.—62 S. W. (2d) 553.

Division One, August 3, 1933.

360

*Ely & Ely* for appellant.

362

*Kratky, Spencer, Soffer, Metz & Nessenfeld* for respondent.

STURGIS, C.—The plaintiff, a young lady aged nineteen, brought this suit by her next friend for personal injuries against William Duerbeck, who died after the case was tried and judgment rendered against him, and, pending his appeal to this court, the case was duly revived against the executrix of his estate. It will simplify the case, however, to treat it as being between Helen Bloecher, plaintiff, and William Duerbeck, defendant, in which plaintiff had judgment, and defendant appeals.

Plaintiff received her injuries while visiting at the rented home of her sister, Mrs. Sam Vitale, in St. Louis, caused by the explosion

of an Arcola hot water heating plant installed in the building rented to Sam Vitale. The building was owned by defendant, William Duerbeck, and consisted of three rooms in a row, the front room being used by the tenant, Sam Vitale, as a shoe repair shop, the next or middle room being the family bedroom, and the rear room was used as a kitchen. The Arcola heater which exploded on this occasion was located in the kitchen, resting on the floor, and from it hot water pipes extended to hot water radiators in the various rooms. On the occasion in question, December 8, 1927, the plaintiff, a school girl, casually dropped in to visit with the Vitale family, husband, wife and baby, and after visiting a short time in the shoe shop she went into the kitchen to visit her sister and the baby. While there this Arcola heater, without warning or apparent cause, exploded with much violence, tearing the heater into three sections, causing the steam and hot water to escape and scattering burning coal and ashes over the floor. One section of the heater fell on and against plaintiff, fracturing her legs and inflicting a number of severe burns and bruises.

The vital question in the case is the cause of this explosion and whether defendant, owner of the building and who had the heater installed a short time previous, is liable for the resultant injuries. The evidence is that this building or this apartment thereof had been heated with stoves and the tenant, Sam Vitale, suggested to defendant that he would like a better means of heating it and suggested putting in a furnace in the basement. Defendant considered the matter and thought that would be too expensive, but suggested that he would install an Arcola heater and charge five dollars per month extra rent. To this the tenant agreed and so defendant installed the Arcola heater, which exploded in the manner stated about a month after it was put in use.

The plaintiff by her petition charged actionable negligence on the part of defendant, viz: (1) That defendant, his agents, servants and employees, installed the heating system in a negligent and defective manner so that steam was likely to be formed and cause an explosion, and that there was no adequate provision made for the escape of such steam; (2) that defendant failed to exercise ordinary care in the selection of men employed to install the heating system, but employed incompetent and inexperienced men to do such work, with the result that said heating system was installed in a manner that was dangerous and not reasonably safe and was likely to blow up and explode; (3) that defendant negligently permitted the heating system to be installed by workmen whom he knew or should have known were incompetent and inexperienced; (4) that defendant permitted the heating system to be installed without either an altitude gauge or a thermometer. Other grounds of negligence were charged but not submitted to the jury.

Defendant's answer, in addition to a general denial, set up as an affirmative defense that the heating system complained of was installed by an independent contractor, and that defendant had no control or right to exercise authority over such contractor during or concerning the installation or equipment of such heating system; that the heating system and premises where located were at and prior to the explosion in the exclusive possession and control of Sam Vitale and his wife as tenants, and that defendant had neither the duty nor privilege of inspection.

In addition to the question of defendant's non-liability on the ground that he had entrusted the installation of this heating system to an independent contractor, to whose negligence, if anyone, was due the defective and improper installation of the heating plant, the question most mooted at the trial was whether the explosion of the heater was what is termed an internal or steam explosion or was an external or fire box explosion; that is, whether the steam coils or pipes in the heater bursted from an excessive pressure of steam inside such coils or pipes or whether explosive gases were generated and formed inside the fire box from the fuel used therein and that such gases ignited and exploded. Plaintiff's theory is that it was an internal or steam explosion and that this was brought about by an improper and defective installation or construction of the system of pipes and appliances constituting the hot water circulation. The theory is that water, when heated, expands, becomes lighter and rises, and *vice versa*, so that the heating of the water at the heater in the circulatory system starts and keeps up a constant flow or circulation, the water when cooled in the radiators returning to the heater. As a consequence of this, if there is an obstruction or stoppage in the circulation at any point from any cause, this will cause an overheating of the water in the heater and excessive steam pressure. It is also shown that an air pocket will naturally form at the highest point in the circulating system which acts as an obstruction to the circulation unless same is drawn off or removed in some way. It was also shown that if the water should freeze at any point in the pipes, this acts in the same way. Plaintiff sought to show that both these things occurred; that is, that no opening or vent was connected with the circulatory pipe at its highest point so as to draw off any air pocket, as should have been done in installing the pipes, and that an air pocket obstructed or stopped the circulation at this highest point. It was also shown that the return pipe near the bottom and before it again connected with the heater was in the basement near an outside opening where it was apt to freeze, it being a cold day in December with the thermometer near zero. The contention is that it did so freeze on this occasion. Defendant does not question the correctness of plaintiff's theory, but contends that neither of these conditions existed and that there was no stoppage in the water cir-

culation at either point by the formation of an air pocket or by freezing. Defendant contended that the highest point in the circulation was near the ceiling directly over the Arcola heater where the "main riser" or pipe running straight up from the heater connects with the lateral pipe leading to the radiators, and it is contended that there was a proper vent or outlet connected at this point; but the plaintiff contends that this was not the highest point in the system, but that the lateral pipe went five inches higher before the water started on its return and descent to the radiators. This was a matter of sharp dispute in the evidence, the defendant claiming that this was the highest point at and before the explosion, but that the explosion itself caused the lowering of the pipes at this highest point to the extent of five inches or more. This, however, was a question for the jury, there being no serious question but that it would be a negligent and faulty construction not to have the opening or vent at the highest point of the circulating system.

The defendant also claims that there was no evidence whatever to support, or rather that the evidence completely disproves, the plaintiff's contention that the return pipe, at or near where a safety device known as the Mueller valve was attached, was frozen and the flow obstructed. This Mueller safety valve was intended to open and prevent excessive pressure, but, as we understand it, freezing would prevent its proper operation. A careful consideration of the evidence on this point convinces us that this was also a question for the jury. The ultimate fact to be determined was whether this explosion was caused by excessive heat on uncirculating water in the coils or pipes and excessive steam pressure on the coils or pipes of the heater, that is, an internal or steam explosion, and if so the evidence justified a finding of negligence and defective installation of the heating plant in not having the vent at the highest point and not placing the return pipe and Mueller safety valve where there was no danger of freezing. Expert witnesses familiar with the principles on which this heater was operated, and basing their opinion on the conditions existing at the time of the explosion and on the physical results of the explosion, testified that in their opinion this was an internal steam explosion and not a fire box explosion. There was also evidence to the contrary. We hold, therefore, that the court properly overruled defendant's demurrer to the evidence. (2). As we have said, the defendant set up as an affirmative defense against any negligence charged against him in negligently installing the heating plant and its appliances that he employed and entrusted the doing of the work and furnishing suitable material to an independent contractor, for whose negligence he is not responsible, unless he was negligent in selecting and employing an incompetent or negligent contractor in doing this work. The persons or firm employed by defendant to install and who did install this heating plant were Murphy and

Tecklin, plumbers and gas fitters. The trial court adopted this theory of a defense and at defendant's instance instructed the jury that before they could find for plaintiff they must find from the evidence that Murphy and Tecklin, or one of them, was either the servant or agent of the defendant and subject to the control of the defendant as to the manner and details of installing the heating system, or that defendant negligently employed Murphy or Tecklin as independent contractors. The court further instructed "that an independent contractor is one who carries on an independent business, and contracts to do a piece of work according to his own methods; and without being subject to the control of his employer as to the means by which the result is to be accomplished. The test of the relationship is the right to control; it is not the fact of actual interference with the control, but the right to interfere that makes the difference between an independent contractor and a servant or agent. If the one doing the work is merely subject to the control or direction of his employer as to the result to be obtained, he is an independent contractor and not a servant or agent." The jury found for the plaintiff notwithstanding these instructions and therefore must have found either that Murphy and Tecklin, who did the work, were not independent contractors under the tests laid down in the instructions or that defendant was negligent in their selection to do this work. Defendant had, however, requested the court to instruct the jury that as a matter of law the evidence conclusively showed that the work of installing this heating system was done by an independent contractor, which instruction the court refused, and this is one of defendant's assignments of error. The defendant also urges that his demurrer to the evidence should have been sustained on the ground that the evidence conclusively established the defense of an independent contractor.

We cannot sustain defendant's contentions in this respect, but are of the opinion that defendant got more than he was entitled to in having this defense submitted to the jury. We hold that the defense of independent contractor has no application under the facts here shown. The relation between defendant and Sam Vitale and his family was that of landlord and tenant, and this plaintiff, while not strictly a member of the tenant's family, was his wife's sister and occupied the position of guest and invitee of such tenant. Defendant owed her the same duty of care and protection from negligent injury as he did the tenant. [36 C. J. 217, 218; Shaw v. Butterworth, 327 Mo. 622, 38 S. W. (2d) 57; Herdt v. Koenig, 137 Mo. App. 589, 119 S. W. 56; Hicks v. Smith, 143 N. Y. Supp. 136.] While a landlord, in the absence of a contract to do so, is under no obligation to his tenant to make repairs or improvements on the demised premises, yet if he voluntarily does so for his own or for the common advantage of both him and the tenant, he must use reasonable care in doing so

and is liable for any injury caused by his negligence. [Finer v. Nichols, 175 Mo. App. 525, 535, 157 S. W. 1023; Patton v. Eveker (Mo. App.), 232 S. W. 762.]

In Shaw v. Butterworth, 327 Mo. 622, 38 S. W. (2d) 57, this court said: "An exception or extension to the rule (of non-liability of a landlord) obtains, however, to the effect that a landlord, undertaking to make repairs upon the demised premises, is liable upon making such repairs for an injury caused by his negligence or that of his servant. And he is liable notwithstanding the repairs were made gratuitously or without obligation. Nor is his liability limited to the tenant personally, but comprehends all persons, such as the tenant's family, servants, and guests, using the premises pursuant to the contract of letting. . . . Within this exception to the rule is the negligent construction of improvements on the demised premises by the landlord. [36 C. J. 218; Klonowski v. Mfg. Co., 217 Ill. App. 150; Mortrude v. Martin, 185 Iowa, 1319, 172 N. W. 17.]"

The serious question for our consideration is whether, granting that the persons who installed this heating system for the defendant, owner of the building, were independent contractors as that term is defined in law, the defendant can escape liability for an injury caused by a negligent defect in the manner of installing the heating plant such as is shown here by entrusting the doing of such work to an independent contractor. In considering this question we must remember that defendant undertook to install this new heating plant in the rented premises for his own advantage in the increased rent to be paid by his tenant. It was wholly with defendant as to whether he would hire the work done in the usual way or let the job to an independent contractor for a lump sum. Before this accident happened the work had been completed and paid for, accepted by defendant as completed, and the contractor discharged. The same accident might have happened a year or two later and the same defense interposed. The injury was not to one of the employees of the contractor, or caused to a third person by the negligence of such an employee during the course of the work, as to whom and the contractor the relation of master and servant existed. It might be that in such a case the independent contractor alone would be responsible. This accident was the result of a permanent defect in the installation of the heating plant, which would be corrected, if at all, by the owner of the premises. The accident was the result of the defective and dangerous condition in which the premises were left after the work of installation of the heating system was completed and it became part of the demised premises and was accepted by the landlord. For this defective and dangerous condition which inhered in the completed work, we think the landlord should be held liable notwithstanding he caused the work to be done by an independent contractor.

In Grant v. Tomlinson, 138 Mo. App. 222, 228, 119 S. W. 1079, where certain improvements were made by the defendant landlord without obligation to do so, but with the consent of the tenant, the court said: ''The Indiana court holds that: 'Where the landlord, whether he has covenanted to repair or not, negligently creates a dangerous condition of the rented premises while making repairs, he is liable to one lawfully on the premises, who, without contributory negligence, is injured by reason of the dangerous condition of the same.' [Barman v. Spencer, 49 N. E. 9.] Such is the law of Massachusetts. [Toomey v. Sanborn, 14 N. E. 921; Leydecker v. Brintnall, 33 N. E. 399.] We believe that, if the injury had been received by the tenant, instead of her servant, by reason of the dangerous condition of the excavation, had she been at the time exercising proper care, she could have recovered for such injury. It was negligence upon the part of the defendant to leave the excavation in its condition notwithstanding it was dug by the permission of the tenant. Such permission implied that the defendant would in the performance of his work use that care and caution which a reasonably prudent man would have exercised, and that he *would not leave it in a dangerous condition.*''

There was never any contractual relation whatever between the tenant, Vitale, or his guest, this plaintiff, and the independent contractor. The only existing relation was that of landlord and tenant between defendant and Vitale, the tenant, which relation inured to the benefit of plaintiff. The doctrine of independent contractor is engrafted on and part of the law of master and servant rather than that of landlord and tenant. While there is much conflict of authority in the cases generally on this question, and the Missouri decisions are difficult to reconcile, the trend of authority in this and other states is to apply the law of landlord and tenant in determining liability regardless of the doctrine of independent contractor as applied in master and servant cases.

Thus in Vollrath v. Stevens, 199 Mo. App. 5, 202 S. W. 283, the landlord volunteered to make certain improvements on the demised premises so as to make same tenantable. The repairs were made in such a negligent manner that certain steps leading from one part of the house to another were insecure and broke under the weight of the tenant, causing her injury. The court said: ''The landlord was not under any obligation to make these repairs in 1909, but, having voluntarily entered upon the task of making them, she was bound to exercise ordinary care to properly make them. . . . The fact that she assumed to make the repairs did not impose upon her the duty to continue making them, as her obligation was not the same as that of a master toward a servant. Plaintiff seems to contend that it was. In the case of master and servant the master is under the obligation to keep the premises (place of work) in a reasonably safe

condition at all times, whereas the duty upon a landlord who voluntarily undertakes to make repairs is only to see that the work be not negligently done, and if the landlord uses ordinary care to repair the premises to last a reasonable length of time he discharges his full duty. . . . The evidence shows that when plaintiff complained of the defective condition of the premises in 1909, defendant's agent sent a carpenter to make the repairs and defendant says that, as the carpenter furnished his own materials and used his own method in doing the job, that he was an independent contractor and for that reason, if the result of his work was that the repairs were not properly made, the defendant is not liable. This contention of the defendant is not well taken. If the lessor undertakes to have repairs made when he has not covenanted to do so, a duty is cast upon him to see that the repairs are made so as not to injure the tenant, and the rule concerning independent contractors has no application.''

In 36 Corpus Juris, 219, under the heading of ''Effect of Employment of Independent Contractor,'' a conflict of authorities is pointed out and this is said: ''In other jurisdictions, however, it is held that the landlord in making repairs and improvements on the demised premises owes a duty of reasonable care to the occupying tenants which he cannot escape by placing the work with an independent contractor, especially if the work to be done is attended with danger to the tenant.'' Decisions from a number of states are cited as supporting this theory, among them Vollrath v. Stevens, 199 Mo. App. 5, 202 S. W. 283, supra.

In Morton v. William Barr Dry Goods Co., 126 Mo. App. 377, 103 S. W. 588, the defendant, owner of the building, installed certain machinery therein in such a negligent manner that plaintiff, one of its employees, was injured. The defendant sought to exonerate itself by the fact that the work of installing this machinery was done by an independent contractor, whose negligence resulted in the injury. The court there said: ''The mechanical engineers employed by appellant were its agents, its *alter ego*, and their negligence was the negligence of appellant and it is liable for the consequences flowing therefrom. . . . That the engineers were negligent in failing to test the head of the blow-off tank which blew up and caused Morton's death, does not admit of doubt. It was appellant's duty to do what it undertook to do by its agents, i. e., to supervise the installation of its machinery and appliances for the purpose of furnishing its servants to be thereafter employed a safe place to work. The duty was a personal one, which could not be delegated to a contractor or employee (cases cited) so as to avoid responsibility for an injury to its servants, caused by a defect in one of its appliances which could have been detected by a simple and ordinary test.''

In Eberson v. Investment Co., 118 Mo. App. 67, 93 S. W. 297, the lease obligated the landlord to keep the roof and exterior parts of

the building in good repair, but this is not different than if the land-lord had voluntarily undertaken the repairs in case such were needed. Defendant landlord undertook to repair the roof and employed an independent contractor, through whose negligence the tenant suf-fered damages. The court instructed the jury that if the work was done by an independent contractor, through whose negligence the damage was caused, the defendant landlord was not liable, but the court ruled: "These declarations of law are palpably erroneous. The covenant of the defendant, in the lease, to repair is a personal one, the performance of which it could not delegate to another so as to absolve it from liability for damages resulting from the neg-ligent performance of the duty. By its contract with Hogg & Reed to make the repairs, plaintiff substituted them in its stead and made them its agent for the performance of the work of restoration; in such circumstances, the rule of responsibility is thus stated by Pro-fessor Wharton: 'The rule that the principal is not liable for the contractor's torts is "inapplicable to cases where the contractor is entrusted with the performance of a duty incumbent upon his em-ployer, and neglects its fulfillment, whereby an injury is occasioned." ' [Wharton on Agency, sec. 485.] This terse and clear statement of the rule by Professor Wharton is supported by the following cases cited in plaintiff's brief: Dillon v. Hunt, 11 Mo. App. 246, af-firmed in 105 Mo. l. c. 161, 16 S. W. 516 (and other cases). . . . The principle is universally recognized that where a duty is in-cumbent upon one to do a particular work, he cannot escape liability for its negligent performance by committing its execution to an in-dependent contractor."

On the second appeal in this same case, 130 Mo. App. 296, 109 S. W. 62, the court adhered to its first ruling as being *res judicata,* but the judge writing the opinion examined the question anew and reviewed at length the many conflicting cases, saying: "The de-cisions are inconsistent on the question of a landlord's liability for loss to a tenant occurring from the negligence of a contractor em-ployed by the former to make repairs, and those cases which affirm liability disagree as to the reasons for the rule." This judge then said that the landlord was held liable notwithstanding his doing the repair or improvement work through an independent contractor, in these instances: "The landlord is liable if the work contracted for is inherently dangerous or will necessarily cause a nuisance. . . . Sometimes the person to whom the work is let is treated as the agent of the proprietor and not an independent contractor, and the land-lord held answerable as a principal. . . . In other cases the lia-bility is based on the mere relationship of landlord and tenant. . . . A lessor has been held answerable to the lessee because the former covenanted to make repairs, it being ruled that such a cove-nant binds the lessor to see the repairs are so made as not to injure

the tenant. . . . And if the lessor undertakes to have repairs made when he has not covenanted to do so, he has been held responsible for the negligence of a contractor employed to do the work." Cases are cited in support of each of these propositions. To avoid any conflict with former cases in this State, particularly Wiese v. Remme, 140 Mo. 289, 41 S. W. 797, and Burns v. McDonald, 57 Mo. App. 599, this was then said: "But when the work is dangerous to a tenant, unless unusual precautions are observed, the lessor can be held liable—a doctrine consistent with the general principles of the law of torts; and under the facts of this case we need not rest our decision on any less stable basis, even though a bare covenant to repair may be enough to make the covenantor liable for the default of a contractor. [1 Thompson, Neg., 652; 1 Shear. and Redf., Neg. (5 Ed.) 175; Woodman v. Railroad, 149 Mass. 335.]" We might rest the present case on this same doctrine.

In the recent case of Galber v. Grossberg, 324 Mo. 742, 25 S. W. (2d) 96, the landlord installed in the building, a part of which was occupied by plaintiff as a tenant, electric light wires and appliances for better lighting of the same. This was done for the landlord's benefit so as to charge the tenants higher rental. The plaintiff as tenant did not exactly consent to making this improvement, but her objection was to the increased rental rather than the doing of the work. This work was done by an independent contractor in a negligent manner, causing plaintiff tenant to be injured. The court said: "The defendants contend that their demurrer to the evidence should have been sustained . . . The basis of this contention is that Hazelwood was an independent contractor, and, for that reason, the defendants are not liable for his negligence, nor the negligence of his helpers, if any, while engaged in doing the work in question. Such is not the law. The plaintiff was entitled to the quiet, peaceable and undisturbed possession, use and enjoyment of the flat, which she occupied as the tenant of the defendants. The work of installing electric light fixtures and apparatus in the flat was done at the instance of the defendants and for their benefit." The court stressed the idea that the tenant was entitled to the quiet and peaceable enjoyment of the premises, which was violated by defendants' acts in making the improvements, but the court cited with apparent approval Eberson v. Investment Co., 118 Mo. App. 67, 93 S. W. 297, and Vollrath v. Stevens, 199 Mo. App. 5, 202 S. W. 283, which, as we have seen, placed the liability of the landlord on the ground that when the landlord voluntarily undertakes to make repairs for his own or the common benefit of himself and tenant, his duty to the tenant is to do the work in a reasonably safe manner, and this duty is not delegable to a contractor, and especially is this true as to the result of the contractor's labor, which result the landlord accepts and adopts as a full compliance of the contractor's duty. The

defendant's non-liability in the present case on the ground of an independent contractor is denied on the ground that the defendant's duty in using or seeing that reasonable care was used in installing this heating plant could not be delegated to a contractor, at least so far as the result of the contractor's labor was concerned. As the employer of an independent contractor can and does hold the contractor accountable for the result of his undertaking, so if negligence enters into such result, causing subsequent injury, the employer is liable. This disposes of a number of defendant's assignments of error.

■ Defendant assigns as error the refusal of the court to give the following instruction: "The court instructs the jury that if you find and believe from the evidence that the explosion mentioned in the evidence took place in the fire box of the furnace and not within the system itself, your verdict will be for the defendant." This instruction embodied defendant's theory of the case and should have been given as a guide to the jury in the absence of any similar instruction. Plaintiff asked no instructions except one on the measure of damages. This compelled the defendant to present all the law of the case in his instructions, even to the extent of outlining to the jury in a negative way the theory on which the plaintiff could recover, a manifestly unfair method of trying the case. We say this because the jury is sworn to try the case according to the law and the evidence—the law being contained in the instructions, which in this case were those given for defendant. If proper instructions had been given for plaintiff informing the jury on what state of facts it could find for plaintiff, refusal of this instruction might not have been error. Plaintiff's theory of defendant's liability was the negligent manner of installing the hot water system passing through the fire box so that the circulation of water was obstructed by the formation of an air pocket or by freezing. This would cause an excessive pressure of steam in the pipes, causing same to explode. Defendant's theory was that the explosion was caused by the generation and accumulation of explosive gases in the fire box from the fuel being burned therein, most likely in this case from using leather and rubber scraps for fuel. If this was the cause and it was a fire box explosion, the defendant's negligence, if any, in the respects mentioned or in any way shown by the evidence had nothing to do with the explosion. There is no defect claimed or shown as to the fire box or any of its appliances. The kind and amount of fuel and the method of keeping up and controlling the fire was in the control of the tenant, Vitale. It was, therefore, important and proper, especially in the absence of any instructions telling the jury on what theory the plaintiff could recover, to have the jury told that if the explosion took place in the fire box and not in the hot water coils or pipes, the plaintiff could not recover for the reason that such a finding would

exclude defendant's negligence as a cause of the accident. It is not an objectionable comment on the evidence to tell the jury the effect of certain evidence. Nor does this instruction fail to exclude defendant's negligence, as is suggested. There was evidence supporting defendant's theory and he was entitled to have it submitted. For this error, the cause is reversed and remanded, and it is not necessary to discuss other matters presented. It is so ordered. *Ferguson* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by STURGIS, C., is adopted as the opinion of the court. All the judges concur.