**Verna MALON, Plaintiff-Appellant,**

v.

**SERVICE AND MANAGEMENT COMPANY, Inc., Defendant-Respondent.**

**No. 32050.**

St. Louis Court of Appeals. Missouri.

May 16, 1967.

Fred Roth, St. Louis, for plaintiff-appellant.

Gentry, Bryant & Sheppard, Robert Nagel Jones, St. Louis, for defendant-respondent.

BRADY, Commissioner.

Jury trial in this cause resulted in a verdict in favor of plaintiff in the sum of $3,500.00. Thereafter the trial court sustained the defendant's motion for judgment in accordance with its motion for a directed verdict and set aside the judgment entered in favor of plaintiff who appeals.

However inartfully expressed in the petition, it is clear that plaintiff's theory was that defendant who owned the house in which plaintiff lived voluntarily attempted to repair a leaky roof but did not use ordinary care in doing so with the result the roof continued to leak and plaintiff walking in the kitchen at night was caused to fall and suffer injuries due to the accumulation of water on the kitchen floor. The jury found in favor of the plaintiff and against the defendant and assessed plaintiff's damages at $3,500.00. The trial court set aside the judgment entered on this verdict on the specified ground that "there was no evidence tending to establish any negligence of the defendant which proximately caused plaintiff's injuries." The case was tried prior to MAI becoming effective. That portion of plaintiff's verdict directing instruction which is pertinent to this issue required the jury to find plaintiff was caused to fall as a direct result of the negligence of the defendant in failing to use ordinary care in repairing the roof. We take this action of the trial court as the equivalent of ruling the plaintiff failed to make a submissible case.

Plaintiff fell upon two different occasions. The first of these falls was on February 21, 1962, and the issues as to her injuries resulting from that fall were stated in Count I of plaintiff's petition. The jury found in favor of the defendant as to that count of plaintiff's cause of action and since no appeal was taken from that decision the fall of February 21, 1962, passes out of the case. Count II of the petition referred to plaintiff's injuries arising from a fall on or about April 5, 1962, and it was as to the injuries resulting from this fall that the jury found in favor of the plaintiff. We will therefore confine our recitation of the evidence, taken in the light most favorable to the plaintiff, to that having reference to the fall in April.

The evidence in this case is not really in dispute except as to one fact. Plaintiff contends defendant had men working upon the repair of this roof upon two occasions while defendant insists the men inspected on the first occasion and actually worked upon the roof only on March 8, 1962. The parties stipulated as to work being done on that date and, taking the evidence in the light required of us, we hold the evidence established that work was also done upon an earlier occasion in February.

Plaintiff and her family moved into this house in September of 1961. It was in January of 1962 the ceiling in the kitchen started dripping water. Plaintiff's husband made a complaint and sometime during the first week in February a man came out to repair the roof. He asked where it was leaking and was given the answer that it was leaking only in the kitchen. The man got onto the roof and the plaintiff's husband testified he heard the man walking around on that portion of the roof above the kitchen. He stayed about forty-five minutes. On that occasion the repairman had a broom and two 5-gallon cans of tar with him but there was no evidence as to whether the tar in the buckets was then put on the roof. The roof continued to leak when it rained and between February and March of 1962 the ceiling in the kitchen

was damp from water dripping, the wallpaper was cracked, and there was a big piece of it hanging down.

They again complained and on March 8, 1962, some men returned to the house to repair the roof. They carried two buckets of tar up the ladder and onto the roof. After that there was no more leakage until just prior to plaintiff's fall in April. There was no evidence as to precipitation during the period from this repair until the day of plaintiff's fall on April 5th.

When they first moved in there were no cracks in the ceiling. Plaintiff's Exhibits 1 and 2 show perpendicular cracks in the ceiling from which the ceiling paper has peeled away. One is about 9–10 feet long and the other 4–5 feet long. These cracks in the ceiling increased in size between the date of the first repair and the time of the plaintiff's fall. Every time it rained the leak got progressively worse. The plaintiff and her family placed pots and pans around on the floor and attempted to catch this water in that manner but water still got all over the floor. It often had to be mopped up after a rain.

There is nothing in defendant's evidence of assistance to plaintiff's case. However, to fully understand what is involved here and the manner in which the repair was done we will set out certain portions of defendant's evidence. The defendant offered testimony by the witness Squire who qualified as an expert in roof repair as to how the work was done on this roof. His testimony was that the cracks in the ceiling were not evident when you looked at the roof from the top of it and that he made an inspection of the whole roof and saw no defects. His testimony and that of his assistant, Tybura, was that they located the area over the cracks in the ceiling by measuring their distance from the walls and then, when on the roof, they measured the distance from the walls thereby fixing that area of the roof above the ceiling cracks. They raked back the gravel, swept all the loose dust away, marked off an area ex-

tending four feet to each side of the crack, poured the asphalt emulsion on the roof, spread it out over a sixty-four square foot area, and then raked the gravel back over this area so that it would hold the tar in place. Squire testified this was the proper way to repair a flat roof of this type using the cold tar method. It is undisputed there was never any repair done inside the house.

The fall upon which Count II of plaintiff's petition is based and with which this appeal is concerned occurred about 1:30 A.M. on April 5, 1962. Plaintiff's evidence was that it rained off and on that evening and was still drizzling intermittently at that time while plaintiff was watching television. She got up and went into the kitchen intending to go to the stove to turn on a light. While doing so her evidence is that she fell on the floor which had become slippery from the water which was dripping down from the crack in the ceiling of this room. Plaintiff's son was in his room in the basement at the time and he heard his mother fall. She called for him and when he came back upstairs he found his mother lying on the floor by the stove and he noticed there was water on the floor at that place in a puddle which he estimated as being "two feet across." It further appeared that the kitchen floor sloped somewhat toward the point at which the stove was placed and water would collect there.

The only other testimony pertinent to this appeal was given during plaintiff's cross-examination when she was asked whether the roof would still leak had the repairmen done a good job on it. She replied " * * * they could overlook something, not covered with enough tar or not did a proper job at the time."

Some general rules of hornbook law which require no citation of cases to substantiate might help in the understanding of the issues here involved. A fair inference from the plaintiff's own testimony that they moved into the house in September of 1961 and did not have any trouble with the roof until January of 1962

is that whatever condition caused the roof to leak came into existence after the tenant (plaintiff and her husband) came into full possession of the premises. In the absence of an agreement in the lease binding the landlord to put or keep the premises in repair, and there is no such evidence in the instant case, he is not liable in damages for failure to do so or for injuries sustained by the tenant for reason thereof. Glenn v. Hill, 210 Mo. 291, 109 S.W. 27, l. c. 28, 16 L.R.A.,N.S., 699. However, the corollary of this rule is that if the landlord does undertake to make repairs either voluntarily or by covenant, he must exercise reasonable care in doing so and is liable to his tenant for injuries caused by his negligence or unskillfulness in making the repairs. Bartlett v. Taylor, 351 Mo. 1060, 174 S.W.2d 844. For an example of voluntarily undertaking to make repairs see Bloecher v. Duerbeck, 333 Mo. 359, 62 S.W. 2d 553, 90 A.L.R. 40, and for other such cases see Mo. Digest, Landlord & Tenant, In many jurisdictions a landlord who voluntarily undertakes to make repairs is not liable for any subsequent injury to the tenant unless by his undertaking he has made the physical conditions of the premises worse or has by the repairs caused the premises to have a deceptive appearance of safety. This is not the rule in Missouri. Bartlett v. Taylor, supra, [3], [4]. In this jurisdiction all that need be shown is that the landlord who has voluntarily undertaken repairs did not exercise ordinary care in doing so and as a direct or proximate result of which failure the tenant was injured.

It follows from what has been said above that the determinative issue in the instant case is a factual one; i.e., was there any evidence the defendant failed to use ordinary care in making repairs to this roof. One way that the defendant could have failed to use ordinary care and be negligent is by the use of improper materials. In view of plaintiff's testimony when asked for her opinion how this roof could continue to leak although the repairs had been twice

attempted it is apparent plaintiff never contended defendant failed to use ordinary care by reason of the use of improper materials. Plaintiff stated the leak could continue ·if the roof was "not covered with enough tar" or if the men had not "did (done) a proper job at the time." Such an answer would seem to negate any contention of the use of inferior or improper materials. But even if it does not negate such contention, the evidence totally fails to substantiate any such contention. There was no evidence that the defendant should have repaired the roof with hot tar rather than by the cold tar method; that he should have used more tar or a better grade of tar; that more or less gravel should have been used or a different kind of gravel; there was no evidence of this or any of similar nature. Plaintiff offered no evidence on this issue at all.

Plaintiff's testimony does contain the implication that her position is based upon the contention defendant did the work in an unskillful manner for she stated the leak would continue if insufficient tar had been used or if the men hadn't done a proper job. In this regard it must be noted that such an answer was stated only as a possibility. She did not state that there was not enough tar used or that the men hadn't done the work in a skillful manner and neither was there any other testimony of that nature. Neither the plaintiff nor anyone for her even inspected this work. To the contrary, the evidence as given by the witness Squire to the effect that he repaired the roof in the proper manner to repair roofs of this type stands uncontradicted.

■ The main burden of plaintiff's brief is placed upon the inference that defendant repaired the wrong area of the roof. There is no actual evidence that the wrong area of the roof was repaired but the plaintiff seeks to draw such an inference from the fact that water continued to drip down from the ceiling. But there is no evidence ·

that this water was caused by a leaky roof. No one, not even plaintiff, so testified. All that was stated was that water dripped from the ceiling. Plaintiff's theory is based upon the assumption that since the water leaked down from the ceiling it must have come from a defect in the roof. The difficulty with such a contention is that it is just as reasonable to assume the water gained entry in some other manner. Indeed, it is even more reasonable to do so in view of plaintiff's own theory the roof was repaired at least once before March 8th. It requires no citation to substantiate the position that when two inferences can be drawn with equal reasonableness from a fact, that fact does not constitute sufficient proof to justify submission of the issue to a jury.

■ There is another inference plaintiff seeks to draw from the fact the roof continued to leak. She not only urges that the defect was in the roof as stated above but also that it was a discoverable defect. She argues therefrom that defendant's workmen failed to discover it and repaired the wrong area of the roof. As heretofore stated, the only persons who made any inspection of this roof were the defendant's workmen, Squire and Tybura. The only direct evidence on this issue is that defendant's workmen examined the roof when they were standing on it, that by such an examination the defect could not be located, and that they inspected the entire roof and found no evidence of any defect. In view of such uncontradicted evidence that there was no discoverable defect any inference that the wrong area of the roof was repaired, whether such an inference is soundly drawn or not, is unavailable to the plaintiff for the reason that inferences are not permitted to outweigh contrary uncontradicted evidence even though such evidence is given in behalf of one's adversary. Lappin v. Prebe, 345 Mo. 68, 131 S.W.2d 511, [6] and cases there cited.

The judgment must be affirmed.

PER CURIAM:

The foregoing opinion by BRADY, C., is adopted as the opinion of the court. The judgment is affirmed.

ANDERSON, P. J., RUDDY, J., and Theodore McMillian, Special Judge, concur.