**MIDKIFF et ux. v. BENSON.    (No. 1133.)**

(Court of Civil Appeals of Texas.    El Paso. Nov. 4, 1920.)

1. **Landlord and tenant ⬤⇒154(4)—Landlord not liable on failure to repair for loss of profits after tenant's business became unlawful.**

In a tenant's action for damages for failure to keep premises used for a pool hall in repair, it was error to refuse to instruct that plaintiff could not recover for loss of profits after Acts 36th Leg. (1919) c. 14, went into effect making operation of pool- halls unlawful.

2. **Landlord and tenant ⬤⇒154(4)—Landlord liable for loss of profits from breach where ascertainable from evidence.**

A tenant may recover against landlord failing to keep building in repair for loss of profits naturally flowing from such breach of contract, where there is sufficient data to enable the jury to ascertain such loss with reasonable certainty.

3. **Landlord and tenant ⬤⇒154(3)—Evidence of tenant's gross receipts is insufficient for ascertaining loss of business profits.**

In a tenant's action against landlord for breach of contract to keep premises in repair, evidence of gross receipts is insufficient to ascertain the amount of tenant's loss of profits.

4. **Landlord and tenant ⬤⇒152(1) — Landlord liable for breach of repair covenant by other tenant.**

A landlord having expressly covenanted to keep a building in repair is liable for breach thereof, even though committed by another tenant subsequently renting a different part of the building, and the fact that the latter is also liable in tort does not relieve the landlord.

5. **Trial ⬤⇒260(1)—Refusing charges on matters otherwise properly covered not error.**

It is not error to refuse charges on matters sufficiently covered by charges given.

6. **Appeal and error ⬤⇒499(4)—Timely objections to charges must appear in record.**

In view of the rule that objections to charges must be presented to the court before the charges are given to the jury, in the absence of an authentic record that objections were so presented as required by law, the appellate court cannot pass upon such objections.

Appeal from District Court, Presidio County; Jos. Jones, Judge.

Suit by J. H. Benson against J. C. Midkiff and wife. Judgment for plaintiff against J. C. Midkiff and in favor of the defendant Mrs. Midkiff, and J. C. Midkiff appeals. Reversed and remanded.

W. C. Jourdan, of Marfa, Walter Anderson, of San Angelo, and J. Q. Henry, of Del Rio, for appellant.

Mead & Metcalfe and C. R. Sutton, all of Marfa, for appellee.

HIGGINS, J.    For about two years prior to July 26, 1918, appellee, Benson, owned and operated a pool room in the town of Marfa. The business ·was conducted in the basement of the Midkiff Building, owned by the appellant J. C. Midkiff and his wife.    On the date mentioned, Midkiff and wife renewed the lease upon the property by written contract whereby the basement was let to Benson for three years beginning on that date; the lessors agreeing to keep the building in repair during the life of the lease.    Some time subsequent to the execution of the contract, the Palace Drug Company and a barber shop became tenants of Midkiff and wife, occupying a portion of the ground floor of the building immediately above the basement. The drug company and the barber shop installed some plumbing necessary in connection with the conduct of their respective businesses.    This plumbing was defectively installed, and as a result thereof water escaped into the ceiling of the basement, penetrated through into the basement, dropped upon the pool tables, materially damaging the same, stood in pools upon the floor, causing the floor to warp and become unlevel and the premises foul smelling and insanitary.

At the time the lease contract was executed, entrance to the basement was on the south side of the building, but about November, 1918, the appellant, Midkiff, placed a stairway entrance to the basement on the north side of the building.    This stairway entrance was left open and uncovered, and rain, sleet, and snow entered the basement through the entrance and stood upon the floor of the premises occupied by· Benson.

Benson brought this suit against the lessors to recover damages for breach of their covenant to keep the building in proper repair.    The case was submitted upon special issues.    The jury found that appellant did not keep the basement in such repair as to be suitable for use as a pool hall from July 26, 1918, to the time the plaintiff closed his hall, and that by reason of such failure plain-

---

⬤⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

tiff had been actually damaged in the sum of $1,200, and upon such findings judgment was rendered in plaintiff's favor against J. C. Midkiff and in favor of Mrs. Midkiff. From the judgment J. C. Midkiff appeals.

[1] Among the items of recovery sought by the plaintiff was a loss of profits resulting to his business caused by the conditions indicated above. Evidence was offered by the plaintiff showing that the volume of his business fell off very greatly, due to the condition of the tables caused by the water dripping upon them and the condition of the floor. It was shown that the rubber in the tables became dead, the covers and the varnish damaged; that the warping of the floors rendered it impossible to keep the tables level; and that when water was standing upon the floor players would not play. It was very clearly shown by the evidence that the plaintiff's business was unfavorably affected by the conditions mentioned, and that it became so bad he closed his hall about November 1, 1919.

The defendant requested a special charge to the effect that from and after May 1, 1919, it had been unlawful to operate a pool hall in Texas, and that plaintiff would not be entitled to recover for any loss of profits after that date. The refusal of this charge is assigned as error. By the act of the Thirty-Sixth Legislature, at its general session, chapter 14, p. 18, it was made unlawful for any person to maintain or operate a pool hall within this state after May 1, 1919. Under the charge given by the court the jury was at liberty to assess damages for lost profits after May 1, 1919. No right of action existed for lost profits incident to the operation of a business forbidden by law, and since the business was unlawful after May 1, 1919, the requested instruction should have been given. Kauffman v. Babcock, 67 Tex. 241, 2 S. W. 878.

[2] Under various assignments the proposition is advanced that the loss of profits is in no event recoverable by the plaintiff for the reason that they are too remote, speculative, and uncertain. We cannot assent to this broad view in so far as concerns profits lost prior to May 1, 1919. Recovery may be had for loss of profits resulting from a breached contract when the loss is such as might naturally be expected to follow the breach. Profits which would ordinarily, naturally, and in the usual course of things, have been derived from performance and the loss of which flows directly and naturally from the breach, may be recovered, since they are naturally incident to the contract and may be fairly supposed to have been within the contemplation of the parties when it was made.

The purpose for which the appellee leased the basement was fully known to the appellant, and he must certainly have known that to permit the premises to be flooded in the manner indicated would unfavorably affect the plaintiff's business and result in a diminution of his profits, and upon this view the lost profits are not to be regarded as too remote. Nor is there any merit in the contention that such profits were necessarily speculative and too uncertain. Prospective profits of necessity to some extent are uncertain and problematical but on that account alone a person complaining of a breach of contract cannot be deprived of remedy. Absolute certainty is not required. No hard and fast rule for ascertaining the profits for the loss of which a recovery may be had can be laid down. Such profits must be determined according to the circumstances of each particular case and the subject-matter of the contract. If there be sufficient data to enable the jury, with a reasonable degree of certainty and exactness, to ascertain the loss, then a recovery can be had. Ry. Co. v. De Groff, 102 Tex. 440, 118 S. W. 134, 21 L. R. A. (N. S.) 749; American Construction Co. v. Caswell, 141 S. W. 1013; Ins. Co. v. Griswold, 212 S. W. 812.

[3] But the proposition of the appellant, under its first assignment as to the insufficiency of the evidence of profits in this case, is sustained. The plaintiff testified concerning his gross receipts prior to the occurrence of the acts complained of and his gross receipts subsequent thereto. There is no evidence of his expenses in conducting the business, and without such evidence it is not apparent how a jury, with any reasonable certainty, could determine what the appellee's profits, if any, were at any time. Knowledge merely of the gross receipts of a business furnishes insufficient data to ascertain the profits of such business. See American Const. Co. v. Caswell, 141 S. W. at page 1018. The contention is sustained that the evidence is insufficient to show with sufficient certainty the loss of profits.

[4] The fourth and fifth assignments proceed upon the theory that the lessor is not liable for the damages resulting from the faulty installation of the plumbing by the Palace Drug Company. No question is presented under these assignments as to the scope of the lessor's covenant to keep the building in proper repair, but the assignments proceed simply upon the theory that the appellant is not liable because the plumbing was installed by the drug company. The appellant, having expressly covenanted to keep the building in proper repair, is bound by the same. He could not avoid the effect of his covenant when he permitted a tenant to enter upon the ground floor and install plumbing which breached his covenant. It is true, the drug store may have been also liable upon tort to the plaintiff, but such liability of the drug company would not re-

lieve the appellant upon his covenant to keep the building in proper repair.

[5] Assignments 6, 7, and 8, complain of the refusal of special charges requested by appellant. Their refusal presents no error, since the subject-matter of the same was sufficiently covered by special charge No. 5 given at the request of the appellant.

There is no error in the refusal of special charge No. 10, which is complained of in the tenth assignment. It was properly re-fused.

[6] Other assignments complain of alleg-·ed errors and omissions in the charge. The record fails to show that any objections to the charge were presented to the court before it was given to the jury. The rule upon this subject is fully stated in Ry. Co. v. Dickey, 108 Tex. 126, 187 S. W. 184. In the absence of an authentic record that the objections were presented to the court as by law re-quired, we cannot pass upon the merits of these assignments.

Questions presented by other assignments of error are ruled by the views heretofore expressed.

For the errors indicated, the judgment is reversed, and the cause remanded.