**HARMS MARINE SERVICE, INC.,**
**Appellant,**

**v.**

**Eugene SWIERE, Appellee.**

**No. 6842.**

Court of Civil Appeals of Texas.

Beaumont.

Dec. 29, 1966.

Rehearing Denied Jan. 25, 1967.

**604**

Eastham, Watson, Dale & Forney, Houston, Feagin W. Windham, Orange, for appellant.

John L. Fulbright, Beaumont, John T. Lindsey, Port Arthur, for appellee.

PARKER, Justice.

Eugene Swiere sued Harms Marine Service, Inc., for (1) damages under the Merchant Marine Act of 1920, commonly referred to as the Jones Act, (2) maintenance and cure under the General Admiralty Law, and (3) damages for failure to pay maintenance and cure, also under the General Admiralty Law. Trial was to a jury with the jury findings favorable to the plaintiff on his cause of action for damages under the Jones Act and judgment for the defendant notwithstanding the jury verdict on plaintiff's causes of action for maintenance and cure, and damages for failure to pay maintenance and cure. For clarity, the parties will be designated as in the trial court.

Defendant has filed a motion to dismiss the appeal of plaintiff, Eugene Swiere. The date of the judgment is August 25, 1965. Plaintiff filed no motion for new trial, but filed his notice of appeal on September 7, 1965. Plaintiff did not file his appeal bond until November 17, 1965. Thus plaintiff failed to perfect his appeal because he did not file his appeal bond within 30 days after the date of the judgment. Rule 356, Texas Rules of Civil Procedure, Neuhoff Bros. Packers v. Acosta, 160 Tex. 124, 327 S.W.2d 434 (1959). Defendant filed its motion for new trial on September 3, 1965 and filed its amended motion for new trial on September 23, 1965. The latter was overruled on October 27, 1965. On November 5, 1965 defendant filed notice of its intention to appeal to this court from that portion, and only that portion, of the judgment "heretofore entered in the cause against it and in favor of plaintiff." Thereafter, on November 9th attorneys for defendant certified on such date they had mailed copies of notice limiting the appeal of defendant to attorneys for plaintiff, which certificate of service was filed November 10, 1965. Defendant thereby complied with new Rule 353(c), T.R.C.P., which for the first time required service of notice of limiting an appeal. Defendant filed its appeal bond on November 11, 1965. Transcript and statement of facts were filed December 27, 1965.

Under Rules 356(a), 306c and 353 (c), T.R.C.P., plaintiff continued to have the burden of perfecting his own appeal. The pendency of defendant's motion for new trial did not have the effect of extending plaintiff's time for filing his appeal bond. Neither did the amendments of the above rules have that effect. The appeal of plaintiff is dismissed for want of jurisdiction. This court limits itself to considering defendant's appeal including briefs and arguments of plaintiff in response thereto.

In granting judgment for the defendant notwithstanding the jury verdict on all causes of action asserted by plaintiff other than that cause of action under the Jones Act, the trial court found there was no evidence to justify a jury finding for the plaintiff on any of the issues quoted below with the answers of the jury to each:

"Special Issue No. 11. Do you find from a preponderance of the evidence that the Plaintiff's said injury has not reached the point where medical science can do nothing further in the way of curing said injury?

Answer 'yes' or 'no'.

Answer Yes

"Special Issue No. 12. On what date do you find from a preponderance of the evidence, did the Plaintiff's said injury reach the point where Medical Science could do nothing further in the way of curing said injury?

Answer by Month, Date, and Year.

Answer: _____

If you have answered Special Issue No. 1 'yes' then you will answer the following Special Issue, otherwise do not answer it.

"Special Issue No. 12–A. What sum of money per day, do you find from a preponderance of the evidence, if any, did the Plaintiff spend for food and lodging or incur liability for, during the period of time from the date of such injury to the date of this trial?

Answer in dollars and cents.

Answer $4.00 per day

If you have answered Special Issue No. 1 'yes' then you will answer the following Special Issue, otherwise do not answer it.

"Special Issue No. 12–B. Do you find from a preponderance of the evidence that the Plaintiff's said injury was aggravated or prolonged as a proximate result of the Defendant's failure to pay maintenance and cure?

Answer 'yes' or 'no'

Answer Yes

"Special Issue No. 22. What sum or money, if any, if now paid in cash, would fairly and justly compensate the Plaintiff for the aggravation or prolongation, if any, of the injuries, if any, that he suffered as a proximate result of the Defendant's failure to pay maintenance and cure, taking into consideration the following elements and none other:

(1) Wages, if any, from the date of the injury to the date of the trial hereof, and such wages, if any, that will probably be lost in the future as the result of such failure;

(2) Mental and physical pain and suffering from the date of such injury to the date of trial and such mental pain and suffering, if any, which the Plaintiff will in all probability suffer in the future as the result of such failure; and

(3) Reasonable attorney's fees incurred by the Plaintiff in bringing this action which were incurred as a result of such failure.

Answer in Dollars and Cents, if any.

Answer: Elements (1) and (2): $10,-500.00

Answer: Element (3): $2,500.00."

Defendant contends that the submission of such issues constituted a gross comment on the evidence in the case with each issue containing one or more comments on the evidence. Under Rule 279, T.R.C.P., these issues should not have been submitted. Defendant objected to their submission of such issues. After the jury returned its verdict, defendant moved for judgment notwithstanding the verdict of the jury of plaintiff's causes of action. The court

granted such motion as to all causes of action except plaintiff's cause of action under the Jones Act, with judgment rendered and entered accordingly. Since there was no evidence justifying the submission of such issue or any of its component parts, it was error to have submitted it to the jury but harmless error.

■ Defendant's 2nd point of error is:

"The Plaintiff failed to request and the Trial Court failed to submit, jury issues or instructions on the element of foreseeability of harm, an essential element of a Jones Act cause of action."

There is no evidence and no finding by the jury that the vessel of defendant was unseaworthy. Such being true, reasonable foreseeability of harm is an essential ingredient of negligence under the Jones Act as it is under an F.E.L.A. cause of action. The legal standards are the same. The burden is upon the plaintiff to obtain findings on such necessary element of foreseeability of harm. Gallick v. Baltimore & O. Ry. Co., 372 U.S. 108, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963); Pittsburg Steamship Co. v. Palo, 64 F.2d 198; Swain v. Mississippi Val. Barge Line, 3 Cir., 244 F.2d 821; Lieberman v. Matson Navigation Co., 300 F.2d 661 (9th Cir. 1962); Tiller v. Atlantic Coast Line, 318 U.S. 54, 67, 63 S.Ct. 444, 87 L.Ed. 610, 617; Brady v. Southern Ry. Co., 320 U.S. 476, 484, 64 S.Ct. 232, 88 L.Ed. 239, 245; Inman v. Baltimore & O. Ry. Co., 361 U.S. 138, 140, 80 S.Ct. 242, 4 L.Ed.2d 198, 200.

In the charge of the court "negligence", "ordinary care" and "proximate cause" are defined as follows:

"By the term 'negligence', as used in this charge, is meant a failure to do that which a person of ordinary prudence in the exercise of ordinary care would do under the same or similar circumstances, or the doing of that which a person of ordinary care would not do under the same or similar circumstances.

"By the term 'ordinary care', is meant that degree of care which would be exercised by a person of ordinary prudence under the same or similar circumstances.

"By the term 'proximate cause', as used in this charge, is meant a cause which in a natural and continuous sequence produces an event and without which the event would not have occurred; and to be a proximate cause of an event, it should have been reasonably anticipated and foreseen by a person of ordinary care and prudence, in the exercise of ordinary care, that the event or some similar event would occur as a natural and probable consequence. There may be more than one proximate cause of an event."

Special Issues 1–10, and the jury answers are as follows:

"SPECIAL ISSUE NO. 1—Do you find from a preponderance of the evidence that the Plaintiff, EUGENE SWIERE, was injured in the course of his employment by the Defendant, Harms Marine Service, Inc., as a seaman aboard the Tug "Chris Harms", on June 12, 1959?

Answer 'yes' or 'no'

Answer: <u>Yes</u>

If you have answered Special Issue No. 1 'yes', then you will answer the following special issue, otherwise do not answer it:

SPECIAL ISSUE NO. 2—Do you find from a preponderance of the evidence that Capt. J. C. Duhon failed to warn the Plaintiff that the coil of welders or jumper cable being thrust up through the manhole on the occasion in question weighed approximately 150 lbs?

Answer 'yes' or 'no'

Answer: <u>Yes</u>

If you have answered Special Issue No. 2 'yes,' then you will answer the fol-

lowing Special Issue, otherwise do not answer it.

SPECIAL ISSUE NO. 3—Do you find from a preponderance of the evidence that such failure on the part of Capt. J. C. Duhon was negligence as that term is herein defined?

Answer 'yes' or 'no'

Answer Yes

If you have answered Special Issue No. 3 'yes', then you answer the following Special Issue, otherwise do not answer it.

SPECIAL ISSUE NO. 4—Do you find from a preponderance of the evidence that such negligence played a part in producing the Plaintiff's injuries?

Answer 'yes' or 'no'

Answer Yes

If you have answered Special Issue No. 1 'yes', then you will answer the following Special Issue, otherwise do not answer it.

SPECIAL ISSUE NO. 5—Do you find from a preponderance of the evidence that Capt. J. C. Duhon failed to use the davit and electric capstan as a means of removing the coil of welding or 'jumper' cables from the hold of the tug "Chris Harms", on the occasion in question?

Answer 'yes' or 'no'

Answer Yes

If you have answered Special Issue No. 5 'yes', then you will answer the following Special Issue, otherwise do not answer it.

SPECIAL ISSUE NO. 6—Do you find from a preponderance of the evidence that such failure was 'negligent' as that term is herein defined?

Answer 'yes' or 'no'

Answer No

If you have answered Special Issue No. 6 'yes' then you will answer the following Special Issue, otherwise do not answer it.

SPECIAL ISSUE NO. 7—Do you find from a preponderance of the evidence that such negligence played a part in producing the Plaintiff's injuries?

Answer 'yes' or 'no'

Answer _____

If you have answered Special Issue No. 1 'yes', then you will answer the following Special Issue, otherwise do not answer it.

SPECIAL ISSUE No. 8—Do you find from a preponderance of the evidence that Capt. J. C. Duhon failed to tell the Plaintiff to get another seaman to help him lift the coil of welding or jumper cables up through the manhole on the occasion in question?

Answer 'yes' or 'no'

Answer Yes

If you have answered Special Issue No. 8 'yes', then you will answer the following Special Issue, otherwise do not answer it.

SPECIAL ISSUE NO. 9—Do you find from a preponderance of the evidence that such failure was 'negligence' as that term is herein defined?

Answer 'yes' or 'no'

Answer Yes

If you have answered Special Issue No. 9 'yes', then you will answer the following Special Issue, otherwise do not answer it.

SPECIAL ISSUE NO. 10—Do you find from a preponderance of the evidence that such negligence played a part in producing the Plaintiff's injuries?

Answer 'yes' or 'no'

Answer Yes"

The phrase "proximate cause" or its equivalent is not used in any Special Issue.

In defendant's objection to the court's charge, it objected to Special Issue No. 4 on the ground that "same does not submit the issue on the grounds of proximate cause, but rather inquires whether the negligence, if any, of Captain Duhon played a part in producing the plaintiff's injuries which is an improper definition and a comment and improperly apprises or confuses the jury because there is no definition of 'played a part'." Defendant's motion for new trial asserted the same errors in many ways.

We agree with defendant's argument that "an act may 'play a part in producing'" an injury without the possibility of harm being foreseeable. To hold a party liable for any consequences of an act, without regard to whether or not such consequences were reasonably foreseeable, makes that party absolutely liable for every factually connected consequence of the act, and does away with the "reasonable standard of care".

Whether or not such error probably caused the rendition of an improper judgment under the plaintiff's Jones Act severed cause of action is now considered.

Both plaintiff Swiere and Duhon were employed by defendant, Harms Marine Service, Inc. Each had many years of experience in this line of work. At the time of this accident Duhon was captain of the tugboat "Captain Chris Harms". Swiere was in charge of the tugboat "Golden Eagle". On the day in question Duhon went in a pick-up truck to the "Captain Chris Harms" in Cow Bayou to determine what to keep on his tugboat, sorting out all else to be transferred to the "Golden Eagle". Plaintiff was ordered to take the "Golden Eagle" to where the "Captain Chris Harms" was docked and transfer the salvage material from Duhon's tugboat to the "Golden Eagle". The only issue raised by the evidence was whether or not Captain Duhon was negligent in failing to warn the plaintiff of the weight of coil of electric cable, if the coil was of such weight that one man could not safely lift it. Plaintiff took his tugboat alongside the other tugboat. He had his crew with him. Plaintiff rigged a capstan and davits to handle equipment too heavy to lift manually from the hold of the "Captain Chris Harms". Captain Duhon was in the hold of his tugboat. Swiere testified the work on the main deck of the "Captain Chris Harms" was done by his own crew, acting solely under his direction. The plaintiff used his own discretion in deciding the methods to be used in transferring the material. He rigged the capstan and used it in transferring a large heavy towing hawser on his own initiative. The evidence is conflicting as to the weight of the cable—defendant's evidence was that it weighed less than 100 pounds and that it was thrust upwards through a manhole 2 feet in diameter in the main deck by Captain Duhon in the hold. Plaintiff's evidence was that two men, Captain Duhon and a deck hand Michon were below and two men were required to pick up the coil of electric cable to hoist it through the manhole to the plaintiff and crewmembers on the main deck. This electric cable had a rubber coating and was coiled. Captain Duhon could not see how the work was being done on the main deck, or how many men on the deck were lifting the material. The manner of doing this work was left to the plaintiff who had at least two men there subject to his orders. When the coil of wire was thrust through the manhole, plaintiff put his arm through the loop, pushing upward from below continuing until the coil was above deck. When it was turned loose by him or them below, plaintiff testified that for the first time he realized it was heavy. At this time he felt a stinging pain. From birth, plaintiff had an umbilical hernia. On this day plaintiff sustained a right inguinal hernia. His explanation for not using men to assist him was that he thought the coil of wire was a garden hose.

Swiere further testified:

"Q You are claiming that the only thing that they did wrong which caused you to have this hernia is that if Captain Duhon had told you how heavy this cable was, you would have suggested taking the davit and picking it up with the davit and setting it on deck, isn't that right?

A Right.

Q And you are not claiming they did anything else wrong, are you?

A Not that I know of.

Q That caused your injury in any way?

A Except fail to tell me that it was heavy."

Plaintiff admitted that Capt. Duhon below deck could not know how many were working on deck or how plaintiff had organized the men because Duhon could not see on the top deck unless he stuck his head through the manhole.

Swiere testified:

"Q So there was no way he could know whether you had three men grabbing it, or four or two?

A No."

■ Plaintiff's position is that if there is any requirement that there be a finding on foreseeability such requirement was satisfied by the jury's answer to Special Issue No. 21, finding that the plaintiff had sustained damages in the amount of $10,500.00 as a *proximate result* of the defendant's negligence. By this answer plaintiff contends the jury "necessarily found that the plaintiff's injuries and damages were the foreseeable result of the defendant's negligence." Proximate result does not encompass foreseeability on the part of the person who was negligent.

■ Examining the record as a whole, the error complained of in defendant's

(appellant's) second point of error is sustained, this court finding it probably did cause the rendition of an improper judgment.

■ Defendant's first point of error is as follows:

"The Trial Court erred in submitting to the jury Special Issue No. 2 inquiring whether 'Captain J. C. Duhon failed to warn the Plaintiff that the coil of welders or jumper cable being thrust up through the manhole on the occasion in question weighed approximately 150 lbs.?', over the objection of the Defendant that the weight of the coil was a disputed and critical issue, and that the issue, as submitted, was a comment on the weight of the evidence, assumed a fact in issue, and deprived the Defendant of a jury trial on this vital point. This comment on the evidence contaminated the entire charge, since it was tantamount to an instruction that the testimony of the Defendant's witness should not be accepted, and that the testimony of the Plaintiff's witness that the coil weighed 150 or more pounds was true."

Plaintiff claimed that he strained himself lifting a too heavy object. The testimony as to weight was diametrically opposed as hereinbefore stated in this opinion. The issue as phrased was a comment on the evidence, and substantially an instruction to the jury that the plaintiff's evidence should be believed. Such comments are prohibited by Rule 272, T.R.C.P. The point of error is sustained.

■ Defendant's third point of error is as follows:

"The Court erred in submitting to the jury Special Issues No. 8 and 9, because such issues were not controlling or ultimate issues, and they constituted a comment by the court on the weight of the evidence."

Special Issue No. 8 assumes that Capt. Duhon had the duty to tell plaintiff to get another seaman to help him lift the

coil of cable and further assumes that Capt. Duhon had the duty to tell plaintiff to take such action. Plaintiff had testified under oath that the only negligence, if any, of the Defendant Capt. J. C. Duhon was in failing to warn him of the weight of the cable. Such issues 8 & 9 should not have been submitted. Also, according to plaintiff's own testimony, the plaintiff was in charge of the work on the main deck of the "Captain Chris Harms". The point of error is sustained.

Defendant's other point of error (5th point) as to the refusal of the trial court to admit into evidence for impeachment purposes certain abandoned pleadings is without merit and overruled.

The judgment of the trial court denying any recovery by plaintiff on all causes of action asserted by it except that under the Jones Act has been disposed of by dismissal for want of jurisdiction. As to the judgment under the Jones Act, which is the sole cause of action before this court, the judgment of the trial court is reversed and remanded.