**Robbie DAMRON, Individually and as Independent Executrix of the Estate of Joe S. Damron, Appellant,**

v.

**C. R. ANTHONY COMPANY, a corporation, Appellee.**

No. 9007.

Court of Civil Appeals of Texas, Amarillo.

July 31, 1979.

Rehearing Denied Aug. 29, 1979.

Crenshaw, Dupree & Milam, Lubbock, for appellant.

Young & Green, Muleshoe, for appellee.

COUNTISS, Justice.

This landlord-tenant dispute presents questions of this court's jurisdiction of the tenant's appeal, the liability of a landlord for the negligence of an independent contractor and the waiver of alleged defects in the tenant's pleadings and court's charge. In the trial court, the landlord, Robbie Damron, individually and as independent executrix of the estate of Joe S. Damron, recovered judgment against the tenant, C. R. Anthony Company, in the sum of $6,800 for unpaid rent. The tenant, C. R. Anthony Company, recovered judgment against the landlord in the sum of $15,000 for negligent damage to merchandise in the store building Anthony was leasing from Damron. Each party appears in this court as appellant on the portion of the judgment adverse to that party. We affirm the judgment of the trial court.

For many years C. R. Anthony Company leased a building in Muleshoe, Texas, from Robbie Damron and her late husband, Joe Damron, for use as a retail mercantile store. The parties operated under a written lease agreement that, as pertinent here, provided as follows:

12. Lessors agree to keep in repair and maintain the exterior parts of the building, including . . . roofs, . . and any necessary repairs will be made within a reasonable time after notice thereof to Lessors . . . .

\* \* \* \* \* \*

20. If Lessors fail to perform any of the affirmative covenants to be performed by Lessors pursuant to the terms of this lease, . . . then Lessee may, at Lessee's option, after notice to Lessors, perform any such affirmative covenant, . . . in Lessee's sole discretion as to the necessity therefor, and the full amount of the cost and expense entailed, . . . shall immediately be owing by Lessors to Lessee, and Lessee shall have the right to deduct the amount thereof, together with interest at the legal rate thereon, from the day of payment, without liability of forfeiture, out of rentals then due or thereafter becoming due thereunder. The option given in this paragraph is for the sole protection of the Lessee and its existence shall not release Lessors from their obligations to perform any of the covenants herein provided to be performed by Lessors, or to deprive Lessee of any legal rights which it may have by reason of any such default by Lessors;

The expiration date of the lease was July 31, 1978, and the rental was $425 per month.

In 1975, the roof of the store had deteriorated to such an extent that a new roof was needed. Mr. Damron and Anthony's manager discussed the matter and in early April, 1975, Mr. Damron advised Anthony's manager that he had hired a roofing contractor to put on a new roof. On or about April 10, 1975, the contractor began work and, by the end of the day, had removed a portion of the roof. When the contractor finished work that day he left the roof inadequately covered and that night it rained in Muleshoe. By morning a substantial amount of rain had accumulated inside the store. By stipulation, the parties agreed that $15,000 in damage to store merchandise was incurred by Anthony because of the rain.

The Damrons' roofing contractor continued to work on the roof but the results were not satisfactory and, in July of 1975, the Damrons hired another roofing contractor who replaced the roof a second time. The parties also discussed replacement of the ceiling, which had been damaged by the water, but never came to an agreement on the division of expenses for that task and the ceiling was not replaced. Subsequently, Anthony moved out of the building and paid no rent after March 31, 1977.

Anthony filed this suit soon after vacating the building, charging the Damrons[1] with negligence in the repair, restoration and completion of the roof, which negligence proximately caused the damage to Anthony's merchandise. The roofing contractors were not sued nor were they mentioned in Anthony's pleadings. Damron responded by pleading, among other things, that any negligence was that of the first roofing contractor, an independent contractor, for whom Damron was not responsible. Damron also filed a cross-action seeking $6,800 for unpaid rent due between April 1, 1977, and the lease termination date of July 31, 1978. Anthony responded to the cross-

action for unpaid rent by alleging that Damron had failed to repair the building and that under the lease the rent was abated and the lease terminated because of this failure.

Trial was before a jury that, in response to special issues, found (1) negligence by Damron's roofing contractor proximately harmed Anthony's goods and merchandise; (2) the building was partially destroyed by the storm, the elements or unavoidable casualty; and (3) the building was rendered untenantable by the aforesaid partial destruction. However, the jury responded in the negative to the fourth question which was whether Damron failed and refused to restore the building to a tenantable condition within a reasonable time after the partial destruction. On the basis of the findings, the trial court entered judgment for Damron and against Anthony in the sum of $6,800 for the unpaid rent and for Anthony and against Damron in the sum of $15,000 for the damaged merchandise.

Mrs. Damron attacks the judgment against her by four points of error, contending that (1) the trial court should have submitted a special issue to determine whether the roofing contractor was an independent contractor; (2) as a matter of law Mrs. Damron was not liable for the negligence of the independent contractor; (3) Anthony's pleadings allege negligence only by Mrs. Damron, not negligence of another that could be imputed to her; and (4) Anthony failed to plead or prove that Mrs. Damron was liable for the negligence of the roofing contractor.

Anthony attacks the judgment against it by a single point of error, and Damron responds to Anthony's appeal by moving the court to dismiss the appeal based on Anthony's failure to timely file its appeal bond.

We conclude that Anthony's appeal was not properly perfected, and we dismiss that appeal and affirm the judgment of the trial court against Anthony.

---

1. Mr. Damron died on July 30, 1977. Mrs. Damron remained as an individual defendant and also assumed representation of Mr. Damron's estate. References hereafter to "Damron" and "Mrs. Damron" refer to Mrs. Damron in her dual capacity.

With regard to Damron's appeal, we conclude that the roofing contractor was an independent contractor as a matter of law, thus obviating the necessity for a special issue on the question, that Damron is responsible for the negligence of the roofing contractor and that any deficiency in pleading or submission of the case to the jury was waived by Damron. Accordingly, we also affirm the judgment of the trial court against Damron.

We will first consider Anthony's appeal. The sequence of 1978 dates pertinent to the question of whether Anthony has properly perfected its appeal is as follows:

(1) June 6—Final judgment is signed by trial court.

(2) June 14—Damron files motion for new trial.

(3) July 31 (Monday)—Damron's motion for new trial overruled by operation of law.

(4) August 9—Damron gives notice of appeal and notice of limitation of appeal to that portion of the judgment awarding Anthony $15,000 against her.

(5) August 18—Anthony gives notice of appeal and notice of limitation of appeal to that portion of the judgment awarding Damron $6,800 against it and files appeal bond.

(6) August 24—Damron files appeal bond.

The timeliness of Anthony's appeal bond is governed by Rule 356(a) Tex.R.Civ.P. which states:

(a) Whenever a bond for costs on appeal is required, the bond shall be filed with the clerk within thirty days after rendition of judgment or order overruling motion for new trial, or after motion for new trial is overruled by operation of law. If a deposit of cash is made in lieu of bond the same shall be made within the same period.

■ The filing of the appeal bond within the required time is mandatory and jurisdictional, cannot be waived or enlarged by any court for any reason, may be raised at any time by any interested party or by the court on its own motion, and dismissal is mandatory upon non-compliance by an appellant. *Neuhoff Bros., Packers v. Acosta,* 160 Tex. 124, 327 S.W.2d 434, 436 (1959); *Abington v. Goss,* 408 S.W.2d 317, 318 (Tex. Civ.App.—Dallas 1966, writ ref'd n. r. e.); *Meinders v. Shamrock Oil & Gas Corporation,* 401 S.W.2d 106, 108 (Tex.Civ.App.— Amarillo 1966, no writ). Also, one party cannot rely on a motion for new trial filed by another party in computing the time limit for posting an appeal bond. Only the party who files the motion is entitled to compute the time limit from the overruling of the motion. Admittedly, Rule 356 is not specific in this regard, but the reference in the rule to a motion for new trial has been construed by the Supreme Court to apply solely to the party filing the motion. *Peurifoy v. Wiebusch,* 125 Tex. 207, 82 S.W.2d 624, 625 (1935); *Neuhoff Bros., Packers v. Acosta,* 160 Tex. 124, 327 S.W.2d 434, 436 (1959). Thus, an appellant cannot rely on the motion for new trial of an adverse party, *Neuhoff Bros., Packers v. Acosta, supra;* a co-defendant, *Olivares v. Service Finance Corporation,* 513 S.W.2d 946, 947 (Tex.Civ.App.—San Antonio 1974, no writ); an intervenor, *Peurifoy v. Wiebusch, supra;* or another party who does not pursue an appeal, *Corpus Christi Theatres, Inc. v. Vasquez,* 457 S.W.2d 382, 383–384 (Tex.Civ.App. —Corpus Christi 1970, no writ). The rationale of these cases is that each appeal must stand on its own, and an appellant cannot rely on the acts of other parties to extend the time limits within which it must act. *Olivares v. Service Finance Corporation, supra.*

■ Anthony occupies the status of an appellant in its attack on the judgment against it for unpaid rent and thus must comply with Rule 356 as construed by the foregoing cases. Since Anthony did not file a motion for new trial and did not file its appeal bond within 30 days after the date of final judgment, dismissal of its appeal is mandatory.

■ Anthony contends, however, that its compliance with Rule 356 is tempered by Rule 353 Tex.R.Civ.P., which states:

No attempt to limit the scope of an appeal shall be effective as to a party adverse to the appellant unless the severable portion of the judgment from which the appeal is taken is designated in a notice served upon such adverse party and filed with the clerk of the trial court within fifteen days after judgment or order overruling motion for new trial is rendered or after motion for new trial is overruled by operation of law.

The substance of Anthony's argument is that the 30 days for filing its appeal bond is computed from the date when Damron's motion for new trial is overruled by operation of law because of Damron's notice of limitation of appeal, which was filed nine days after Damron's motion for new trial was overruled. In essence, Anthony is saying that, since it did not know the appeal was to be limited until Damron filed her notice of limitation of appeal, it should be permitted to file its appeal bond after being notified of the limitation of the appeal. We recognize the reasonableness of Anthony's argument, especially in view of the general commentary to Rule 353, which was written prior to the 1976 amendment.[2] However, the fundamental principle that each appeal must stand on its own remains the law of the state. Anthony could not rely on Damron's motion for new trial, which complained only of the portion of the judgment adverse to Damron, to suspend Anthony's time for filing an appeal bond if Anthony wanted to appeal from the clearly severable portion of the judgment adverse to it.

Confronted with an almost identical fact situation, the court in *Harms Marine Service, Inc. v. Swiere*, 411 S.W.2d 602, 604 (Tex.Civ.App.—Beaumont 1966, writ ref'd n. r. e.), *cert. denied*, 389 U.S. 899, 88 S.Ct. 227, 19 L.Ed.2d 223 stated:

Under Rules 356(a), 306(c) and 353(c), T.R.C.P., plaintiff continued to have the burden of perfecting his own appeal. The pendency of defendant's motion for new trial did not have the effect of extending plaintiff's time for filing his appeal bond. Neither did the amendments of the above rules have that effect.

*See also Johnson v. Downing And Wooten Construction Co.*, 480 S.W.2d 254, 256–257 (Tex.Civ.App.—Houston [14th Dist.], 1972, no writ); *Great Eastern Life Ins. Co. v. Jones*, 526 S.W.2d 268, 270 (Tex.Civ.App.—Beaumont 1975, writ ref'd n. r. e.).

■ In summary, it is our holding that the filing of a motion for new trial and the subsequent limitation of appeal under Rule 353 by party number one does not in any manner excuse party number two from filing an appeal bond within the time specified in Rule 356(a), computed without regard to the actions of party number one, if party number two wants to appeal a severable part of the judgment. The appeal of C. R. Anthony Company is dismissed.

We next consider Damron's appeal. Although Damron assigns as error the failure of the trial court to submit an issue inquiring whether the roofing contractor was an independent contractor, she concedes in her brief that the independent contractor status was established as a matter of law and that no special issue was necessary. We have examined the evidence and we agree.

■ The ultimate test of whether a worker is an independent contractor, as stated in *Newspapers, Inc. v. Love*, 380 S.W.2d 582, 584–592 (Tex.1964), is whether the right to control the details of the work was vested in the worker or in the employ-

**2.** The general commentary to Rule 353 in Vernon's Annotated Rules is misleading because the last paragraph seems to say that either party has 30 days to file the appeal bond after "rendition of judgment or order overruling motion for new trial." However, as *Peurifoy v. Wiebusch, supra*, and *Neuhoff Bros., Packers v. Acosta, supra*, make clear, only the party who files the motion for new trial can delay filing an appeal bond until after the motion is overruled. Another party who may want to complain about some part of the judgment but does not file a motion for new trial must either file an appeal bond within time limits computed from the date of the judgment or take the chance that the party filing the motion for new trial will not limit the appeal and that the complaint can be presented by cross-points. *See Jackson v. Ewton*, 411 S.W.2d 715, 717–718 (Tex.1967) for a discussion of the function of cross-points and counter-points. *See also* Rule 324, Tex.R. Civ.P.

er. Absent the right of control, the worker is an independent contractor.

 In this case, the evidence is undisputed that Mr. Damron had no control over the details of the work and sought none; when he employed the contractor, he was interested only in the end result. The contractor took the job on a bid basis, provided his own tools and employees and received no supervision or guidance from Mr. Damron. Thus, the roofing contractor was, as a matter of law, an independent contractor. The first point of error is overruled.

An analysis of the landlord's liability for the negligence of an independent contractor begins with the general principle that an employer is insulated from liability for the negligence of an independent contractor by the existence of the contract. This rule, however, like many general principles is so riddled with exceptions that it is "primarily important as a preamble to the catalog of its exceptions." *Pacific Fire Ins. Co. v. Kenny Boiler & Mfg. Co.*, 201 Minn. 500, 277 N.W. 226, 228 (1937). The Restatement of Torts, Second states two exceptions applicable to the general problem area in this case:

§ 419. Repairs Which Lessor is Under a Duty to His Lessee to Make.

A lessor of land who employs an independent contractor to perform a duty which the lessor owes to his lessee to maintain the leased land in reasonably safe condition, is subject to liability to the lessee, and to third persons upon the land with the consent of the lessee, for physical harm caused by the contractor's failure to exercise reasonable care to make the land reasonably safe.

§ 420. Repairs Gratuitously Undertaken by Lessor.

A lessor of land who employs an independent contractor to make repairs which the lessor is under no duty to make, is subject to the same liability to the lessee, and to others upon the land with the consent of the lessee, for physical harm caused by the contractor's negligence in making or purporting to make the repairs as though the contractor's conduct were that of the lessor.

Restatement (Second) of Torts §§ 419, 420 (1965).

Although the foregoing sections speak of "physical harm" there is no logical reason to distinguish between harm to the lessee's person and property, and we make no such distinction in this case. The quoted Restatement sections also illustrate that the duty can be imposed on the landlord either by contract or by voluntary assumption of the duty.

Texas has long followed the foregoing principles, as exemplified by *Dalkowitz Bros. v. Schreiner*, 110 S.W. 564, 565 (Tex. Civ.App.1908, no writ). In that case the landlord, although not under a duty to repair the leasehold, undertook to install a new roof at the request of the tenant. The work was negligently done by the independent contractor employed by the landlord, and leaks in the roof damaged the tenant's goods. In affirming judgment for the tenant for the value of the goods, the court held that "the rule of independent contractor does not avail to relieve appellee [landlord] of responsibility. The contractor was her representative in and about the work, so far as appellants [tenants] are concerned." *See also Kampmann v. Rothwell*, 101 Tex. 535, 109 S.W. 1089, 1090 (1908); *Central City Loan & Investment Co. v. Vincent*, 117 S.W. 912 (Tex.Civ.App.1909, no writ); *Midkiff v. Benson*, 225 S.W. 186, 187–188 (Tex.Civ.App.—El Paso 1920, no writ).[3]

 The basis of liability in the foregoing cases is the assumption of a duty by the landlord to perform a particular act for the tenant. Whether the duty is assumed gratuitously or by contract, the landlord has primary liability for discharge of the duty and cannot insulate himself from the negligent discharge of the duty by his independent contractor.

3. Other jurisdictions are in accord with this view. *See, e. g., Nahm & Friedman v. Register Newspaper Co.*, 120 Ky. 485, 87 S.W. 296 (1905); *Komar v. Wynn*, 125 Misc. 176, 210 N.Y.S. 422 (1925); *Bloecher v. Duerbeck*, 333 Mo. 359, 62 S.W.2d 553 (1933).

There is nothing novel about the concept of a non-delegable duty which holds one accountable to others for the negligence of an independent contractor. For example, in *Bond v. Otis Elevator Company*, 388 S.W.2d 681, 685–686 (Tex.1965), the owner of a building was liable to an elevator passenger for injuries inflicted because of the negligent repair of the building's elevator by an independent contractor, even without any negligence by the building's owner. Liability existed because the owner had a non-delegable duty to maintain the elevator in reasonably safe condition for all who would be expected to use it. In *El Paso Electric Co. v. Buck*, 143 S.W.2d 438, 441 (Tex.Civ.App.—El Paso 1940, writ dism'd jdmt. cor.), the company was liable to a customer for injuries inflicted because of the negligent installation of electrical equipment by a co-defendant, although there was no finding of negligence against the company. The court indicated that it was immaterial whether the co-defendant was an independent contractor. The work created a dangerous condition and the company, having contracted with the customer to perform the work, had a non-delegable duty to protect the customer from or warn the customer of the danger. In *Dupree v. Piggly Wiggly Shop Rite Foods, Inc.*, 542 S.W.2d 882, 887 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n. r. e.), the independent contractor status of its security guards did not protect a grocery store from liability for a false arrest by one of the guards. Again, the store owner had a non-delegable duty to its customers, in that instance to protect them from the intentional tort of false arrest.

The lesson to be learned from the foregoing authorities is that there are certain non-delegable duties that exist, whether created by contract, voluntary assumption or public policy, and when a person assumes one of those duties that person remains accountable for its performance regardless of the means used to effectuate the performance.

In the case now before the court, Damron contracted to "keep in repair and maintain the exterior parts of the building, including, . . . roofs . . . ." She voluntarily undertook the performance of that duty by hiring an independent contractor to replace the leaky roof. Having contractually (and voluntarily) assumed the duty to repair the roof, she is responsible for damages incurred by Anthony because of the negligent performance of that duty regardless of the means employed.

Mrs. Damron asserts that under the authority of *McCrory Corporation v. Nacol*, 428 S.W.2d 414 (Tex.Civ.App.—Beaumont 1968, writ ref'd n. r. e.) and *Hamblen v. Mohr*, 171 S.W.2d 168 (Tex.Civ.App.—Galveston 1943, writ ref'd w. o. m.), the duty to repair rested on the tenant, not the landlord, because of the lease language in paragraph 20, *supra*, permitting the tenant to perform the repairs and deduct the cost from the rent if the landlord failed to perform as required by the lease. The principle involved in the cited cases would perhaps be applicable if the injury had resulted from the failure of the landlord to take any affirmative action to repair the roof. Where, however, the landlord does in fact initiate performance of the duty imposed by the lease, the principle is not applicable. The landlord has affirmatively set into motion the chain of events which led to the injury, and it is not a defense to say that the tenant had the right to repair the roof if the landlord did not do so and deduct the cost from the rent. The second point of error is overruled.

The final question confronting the court is whether Damron has preserved error in alleged pleading defects by Anthony. Anthony's pleadings allege that Damron's negligent repair of the roof was the proximate cause of its damage. There are no pleadings by Anthony alleging negligence by the roofing contractor or Damron's responsibility for that negligence. At the trial, Anthony introduced the lease agreement and testimony showing the manner and method of Damron's employment of the roofing contractor and the actions taken by the contractor that caused the damage to Anthony. The trial court submitted to the jury a

special issue inquiring whether negligence by the roofing contractor proximately caused Anthony's damage. The jury's affirmative answer to that inquiry is the basis of the judgment against Damron.

 The record does not reflect any objection by Damron, founded on a pleading deficiency, to the evidence concerning the employment of, or negligent acts by, the roofing contractor. Also, there is no objection that the operative special issue is not supported by the pleadings. Not until Damron filed her motion for new trial did she raise the failure of Anthony's pleadings to allege the theory of recovery that was submitted to the jury.[4] Assuming that the pleadings do not sufficiently allege the theory upon which this case was tried, we have carefully examined the record and are unable to find any objection by Damron which preserves that error. Therefore, on the record before us, we must conclude that Anthony's theory of the case was tried by implied consent. Rules 67 and 274, Tex.R. Civ.P.

Rule 67 states that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Rule 274 requires a party objecting to the charge to point out distinctly the matter and grounds of the objection and provides that any "defect, omission, or fault in pleading, shall be deemed waived unless specifically included in the objections." Tex.R.Civ.P. 274. Judicial interpretation and analysis of these rules confirm that they mean exactly what they state. Absent either timely objection to the evidence or to the special issue prior to submission the pleading defect is waived, and it is presumed that the issue is tried by implied consent. *Willeford v. Walker*, 499 S.W.2d 190, 193 (Tex.Civ.App.—Corpus Christi 1973, no writ); *Burgamy v. Lawrence*, 480

S.W.2d 38, 40 (Tex.Civ.App.—San Antonio 1972, no writ); *Coleman v. Banks*, 349 S.W.2d 737, 740 (Tex.Civ.App.—Dallas 1961, writ ref'd n. r. e.); 2 R. McDonald, Texas Civil Practice § 5.18 (rev. 1971).

The third and fourth points of error are overruled.

The judgment of the trial court is affirmed.

ON MOTION FOR REHEARING

 Among other matters, Damron moves in her Motion for Rehearing that costs of court be taxed one-half to each party, since both Damron and C. R. Anthony sought a review of the trial court's judgment. We agree with Damron's contention and, thus, order that the costs of appeal shall be assessed one-half to Damron and one-half to C. R. Anthony. Rule 435, Tex. R.Civ.P.

The remaining portion of appellant's Motion for Rehearing is overruled.

4. Damron's special exceptions can be construed to raise the issue, but the record does not reflect the trial court's action thereon so the exceptions are waived. Tex.R.Civ.P. 90. There is also authority that objections to evidence not founded on written pleadings must be made even if the exceptions are overruled. *Republic Bankers Life Insurance Company v. McCool*, 441 S.W.2d 314, 317 (Tex.Civ.App.— Tyler 1969, no writ).