KNICKERBOCKER BUILDING SERVICES, INC. ET AL., APPELLEES, *v.* PHILLIPS, D.B.A. NATIONWIDE LIQUIDATING COMPANY; MAURER, D.B.A. MAURER-GREEN REALTY COMPANY ET AL., APPELLANTS.

(No. WD-84-7—Decided July 27, 1984.)

*Thomas R. Furey,* for appellees.
*Max E. Rayle,* for appellants.

DOUGLAS, J. This matter is before the court on appeal from the judgment of the Wood County Court of Common Pleas. The issue before this court is narrow in scope and addresses the question of whether the negligence of an independent contractor hired by a landlord can be imputed to the landlord when a tenant's property is damaged by the independent contractor's negligence. The facts of the case are as follows.

Robert W. Maurer and Allen A. Green (d.b.a. Maurer-Green Realty Company), appellants herein, are owners of a large, warehouse-type building located in Bowling Green, Wood County, Ohio. Appellee Knickerbocker Building Services, Inc. ("Knickerbocker") had entered into an oral, month-to-month lease with appellants Maurer and Green whereby appellee Knickerbocker leased approx-

imately four thousand square feet of storage space from appellants.

Appellants Maurer and Green contracted with defendant Dale R. Phillips, d.b.a. Nationwide Liquidating Company ("Nationwide"), for the removal of heavy machinery and various structural obstacles located in the warehouse. There is no factual dispute that defendant Nationwide was, as matters of fact and law, an independent contractor.

On the evening of December 11, 1980, said date being part of the time period when defendant Nationwide was working in the warehouse, a fire erupted and totally destroyed all of the various machinery which Knickerbocker had stored in its leased warehouse space. Knickerbocker, and its subrogated insurance carrier, Cincinnati Insurance Company ("Cincinnati Insurance"), also an appellee herein, commenced an action on December 2, 1982, against Nationwide, and Maurer and Green, seeking damages for the loss of the stored equipment.

Nationwide filed an answer in which it stated that Dale R. Phillips, d.b.a. Nationwide, was discharged in bankruptcy concerning the claims in the appellees' complaint. Appellants Maurer and Green, owners and landlords, filed their answer, in which they alleged as an affirmative defense that any loss suffered by appellees "was a direct and proximate result of the sole negligence of an independent contractor, thereby insulating [appellants] from liability."

On July 12, 1983, appellants Maurer and Green moved for summary judgment on the issue of liability on the basis that (1) the direct and proximate cause of the fire was the negligence of defendant Nationwide, and (2) as defendant Nationwide was an independent contractor, appellants contended that they were not liable for defendant Nationwide's negligence. The trial court, on October 18, 1983, denied appellants' summary judgment motion. In doing so,

the trial court relied upon the Supreme Court's decision in *Strayer* v. *Lindeman* (1981), 68 Ohio St. 2d 32 [22 O.O.3d 159]. Based on the *Strayer* decision, the trial court held that appellants Maurer and Green, landlords and owners, would be liable to appellees for the negligence of defendant Nationwide, if, in fact, Nationwide was negligent in the performance of its work.

On December 30, 1983, the trial court entered judgment on the pleadings against defendant Nationwide in view of appellees' allegations of negligence and Nationwide's failure to deny said allegations in its answer. Appellants and appellees stipulated that appellees' property loss totaled $16,000. Further, appellees and appellants stipulated that appellees' property loss was "directly and proximately caused by the fire of December 11, 1980 * * * which was due to the negligence of defendant Dale R. Phillips, dba, Nationwide Liquidating Co., or his agents and/or employees."

In light of these and some other stipulations, the trial court, on December 30, 1983, then entered the following judgment:

"Based upon the pleadings, stipulations and depositions, the court finds as a matter of law that any negligence of Defendant Dale R. Phillips, dba Nationwide Liquidating Co., his agents or employees, all of whom were independent contractors at the time, is imputed to Defendants Robert W. Maurer and Alan [*sic*] A. Green, individually and dba Maurer-Green Realty Co. and said Defendants are subject to the same liability to Plaintiffs as though the acts of Defendant Dale R. Phillips, dba Nationwide Liquidating Co. were that of Defendants Robert W. Maurer and Alan [*sic*] A. Green, individually and dba Maurer-Green Realty Co.

"WHEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that judgment be, and it is hereby granted in favor of Plaintiffs

against the Defendant Dale R. Phillips, dba Nationwide Liquidating Co. in the amount prayed for in the complaint.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that judgment be, and hereby is granted in favor of Plaintiffs against Defendants Robert W. Maurer and Alan [sic] A. Green, individually and dba Maurer-Green Realty Co., in the sum of Sixteen thousand dollars ($16,000.00) plus costs and interest."

It is this judgment which appellants now appeal, stating as their sole assignment of error:

"The trial court committed prejudicial error in imputing the negligence of the independent contractor to appellants and granting judgment thereon."

Perhaps the most interesting question in the case *sub judice* is "who caused the fire?" The trial court entered judgment on the pleadings against Nationwide since Nationwide failed in its answer to deny appellees' allegations of negligence.[1] However, from our review of the depositions and other material in the record, it is readily apparent that the record contains no definitive answer to the question regarding the cause of the fire. We are not unmindful, however, of the stipulation entered into between appellants and appellees which states that the fire was, in fact, caused by the negligence of Nationwide. This stipulation, however, amounts to no more than the parties to this appeal pointing an accusatory finger at a third party and blindly stating the equivalent that Nationwide was the cause of the fire. Our comments are not to be construed as even slightly suggesting that either appellees or appellants are responsible in any way for the cause of the fire. We simply note that the record contains a factual question regarding Nationwide's negligence as being the cause of the fire.

We also recognize that the question which we are to decide is not one regarding the cause of the fire. Rather, the question with which we are confronted is: Given that the negligence of an independent contractor causes a fire which damages the property of a lessee, may the negligence of that independent contractor be imputed to the landlord: (1) where the leasehold is commercial rather than residential; (2) where the landlord is under no duty, statutory, contractual or otherwise, to undertake a salvage/alteration operation; (3) where the operation undertaken is not for the benefit of the lessee; and (4) where the work which is undertaken is not a "repair."

Generally speaking, "* * * an employer is not liable for the acts of an independent contractor or of his servants. * * *" 3 Ohio Jurisprudence 3d (1978) 332, Agency, Section 216. Similarly, as a general principle, this rule applies in the landlord-tenant context. 33A Ohio Jurisprudence 2d (1976) 347, Landlord and Tenant, Section 441. The general principle, however, is so riddled with exceptions, that it is "* * * 'primarily important as a preamble to the catalog of its exceptions.' * * *" *Damron* v. *C. R. Anthony Co.* (Tex. Civ. App. 1979), 586 S.W. 2d 907, 913, quoting from *Pacific Fire Ins. Co.* v. *Kenny Boiler & Mfg. Co.* (1937), 201 Minn. 500, 503, 277 N.W. 226, 228.

The Supreme Court, in *Strayer, supra*, stated in its syllabus:

"A landlord who employs an independent contractor to make repairs is subject to the same liability to the tenant, and to others upon the leased property with the consent of the tenant, for harm caused by the contractor's negligence in making or purporting to make the repairs as though the contractor's conduct were that of the landlord."

---

[1] Nationwide has not appealed the trial court's judgment entered against it. Accordingly, this appeal has no effect on the trial court's judgment against Nationwide.

Although the above statement is quite a sweeping one, when the actual holding of the case is examined, however, it is quickly seen that the actual rendered decision was rather narrow in scope:

"The General Assembly has deemed it the public policy of the state of Ohio that '[a] landlord who is a party to a rental agreement shall * * * [m]ake all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition.' R.C. 5321.04(A)(2). We hold today that when a landlord employs an independent contractor to make repairs in compliance with the statutory duties imposed by R.C. Chapter 5321, the landlord cannot thereby insulate himself from liability arising out of the negligent performance of those repairs. Rather, the negligence of such independent contractor, if any, is imputable to the landlord. In such a situation, the general rule that the negligence of an independent contractor is not imputable to his employer does not apply." *Id.* at 36.

Immediately noticeable is the Supreme Court's rationale for its holding, that being that the legislature has deemed it the public policy of this state that *residential* landlords have a responsibility and duty to insure that *residential* rental premises are in a fit and habitable condition. In light of this legislative mandate, the statutory duty imposed upon residential landlords for the safety and well-being of residential tenants becomes "non-delegable." See 33A Ohio Jurisprudence 2d (1976) 347, Landlord and Tenant, Section 441; 3 Ohio Jurisprudence 3d (1978) 334, Agency, Section 217.

No statutory non-delegable duty exists to permit an alteration of the general rule in the present case, as the lease was *commercial* rather than *residential,* and it is settled law that the duties imposed upon a landlord in R.C. Chapter 5321 only apply to *residential* premises. See R.C. 5321.01(A), (B) and (C); *Laster* v. *Bowman* (1977), 52 Ohio App. 2d 379 [6 O.O.3d 428]. Thus, the precise question which confronts this court concerns commercial rather than residential rental property. The Supreme Court has not yet spoken regarding this issue, and this court, absent Supreme Court authority, is most cautious and reserved in setting aside long-standing and well-established general rules of law.

We do, however, recognize that the case upon which the *Strayer* court relied, *Damron, supra,* concerned a commercial rather than a residential lease agreement. Inescapable though is the fact that in *Damron* a lease agreement existed whereby the landlord was to "* * * 'keep in repair and maintain the exterior parts of the building, including * * * roofs * * *.' * * *" *Damron, supra,* at 914. Although not a statutory duty, the *Damron* court held that a contractual duty, voluntarily assumed, existed on the part of the commercial landlord to keep the roof in repair. "The lesson to be learned," as the *Damron* court pointed out:

"* * * [I]s that there are certain non-delegable duties that exist, whether created by contract, voluntary assumption or public policy, and when a person assumes one of those duties that person remains accountable for its performance regardless of the means used to effectuate the performance." *Damron, supra,* at 914.

Thus, the *Damron* court also relied upon the principle of a non-delegable duty in reaching its decision. Accordingly, the principle which is to be gleaned from *Damron* and *Strayer, supra,* is that when a landlord has a non-delegable duty to a tenant, whether that duty arises by operation of statute or an agreed-upon contract and regardless of whether the leasehold be residential or commercial, the landlord may not insulate himself from liability for failing to

properly perform his duty by hiring someone else to perform the duty in the landlord's stead.

In the instant case, the facts indicate that no statutory or contractual non-delegable duty existed which required appellants to undertake the work on behalf of appellees. Thus, the underlying theory and rationale for both the *Strayer* and *Damron* decisions is absent in the instant case. We further recognize that the underlying basis of liability in the *Strayer* case was reliance upon 2 Restatement of the Law 2d, Property, Landlord and Tenant (1977) 276, Section 19.3. That section of the Restatement states that the landlord is held liable for the assumption of a duty to perform a particular act for the tenant. *Strayer, supra,* at 35. See, also, *Damron, supra,* at 913, citing nearly identical language in 2 Restatement of the Law 2d, Torts (1965) 403, Section 420. Thus, *Strayer, Damron,* and the Restatement of Property all agree that when repairs are undertaken gratuitously rather than out of duty, a landlord's liability is equivalent to that when repairs are undertaken because of and in light of a specific duty to so undertake. In any event, however, both *Strayer* and *Damron* anticipate that any act, whether performed gratuitously or pursuant to duty, must be performed "for the tenant." *Strayer, supra,* at 35. See, also, *Damron, supra,* at 913. The facts of the instant appeal in no manner even suggest that the "act" undertaken by appellants was in any way "for the tenant." Thus, *Strayer, Damron* and 2

Restatement of the Law 2d, Property, Landlord and Tenant (1977), Section 19.3, do not apply in the instant case.

Also, we question whether the undertaking of the landlord was, as matters of fact and of law, a "repair or repairs." We note that the Supreme Court in the syllabus of *Strayer* and its specific holding used the term "repairs." The stipulations entered into and between appellees and appellants in the trial court do not include that the undertaking of the landlord was one of "repair." Appellants, in their answer, admit in paragraph three that Nationwide was hired "as an independent contractor to undertake alterations and/or salvage operations" in the building. Our research has indicated that the term "repair":

"* * * naturally means a restoration approximately to the original condition, taking into consideration natural wear and tear and the ordinary action of the elements. The term means to renew or restore an existing thing, and not to make a new one. It may be observed, however, that the term 'repair' and the term 'renew' are not words expressive of a clear contrast. Repair frequently involves a renewal of a subordinate part. It is a restoration by renewal or replacement of subsidiary parts of a structure. As distinguished from repair, renewal is a reconstruction of the entirety or a substantial part of the whole." (Footnotes omitted.) Annotation, Extent of Lessee's Obligation under Express Covenant as to Repairs (1926), 45 A.L.R. 12, 42-43.[2]

---

[2] The term "repair" has also been construed to mean "* * * the reconditioning of a structure or thing that has become imperfect by reason of the elements or otherwise. * * *" (Footnote omitted.) Annotation, Duty of Owner of Premises to Furnish Independent Contractor or his Employee a Safe Place of Work, Where Contract is for Repairs (1953), 31 A.L.R. 2d 1375, 1380.

Also in this regard, the court in *Ham-*

*mond* v. *El Dorado Springs* (1951), 362 Mo. 530, 534, 242 S.W. 2d 479, 482, discussed the term "repair" as follows:

"To repair a structure or thing presupposes that it is defective in some respect, otherwise there would be no necessity to repair, alter or improve. This court in the case of *Meyer* v. *Wells Realty & Investment Co.,* 292 S.W. 17, held that where an employee fell from a defective scaffold furnished

The activity for which Nationwide was hired does not fall under the definition of "repair" as stated above. Thus, the principles announced in *Strayer, Damron,* and the Restatement of Property, are not applicable to the activity in which Nationwide was engaged.

Based on the foregoing, appellants' sole assignment of error is found well-taken and the judgment of the Wood County Court of Common Pleas is reversed. Upon our close review of the record, we see that appellees have also alleged in their complaint that appellants were negligent in the selection and employment of Nationwide. See 3 Ohio Jurisprudence 3d (1978) 337, Agency, Section 218. In light of the stipulations entered into between the parties and the trial court's judgment entry, it was unnecessary for the trial court to address and rule on this specific allega-tion. If, however, this court were to enter judgment on behalf of appellants, appellees would effectively be foreclosed from pursuing this theory of recovery. The record reveals that no determination has been made on the issue of appellants' negligence in hiring and employing Nationwide; and, further revealed by the record is the fact that a question remains as to whether appellants were negligent in this regard. This cause is, therefore, remanded to the trial court for further proceedings not inconsistent with this opinion. Pursuant to App. R. 24, costs of this appeal are assessed against appellees.

*Judgment reversed
and cause remanded.*

HANDWORK and RESNICK, JJ., concur.

---

by his employer in violation of a statute requiring a scaffold to insure safety of those using same while *'repairing'* a building, [he] could not recover when it was shown employee was merely washing walls when he fell. The court cited with approval an Iowa case, Woodbury Company v. Tackaberry Co., 166 Iowa 642, 148 N.W. 639, the opinion of which quoted an English case as follows:

" 'Repair always involves renewal; renewal of a part; of a subordinate part. A skylight leaks; repair is effected by hacking out the putties, putting in new ones, and renewing the paint. A roof falls out of repair; the necessary work is to replace the decaying timbers by sound wood; to substitute sound tiles or slates for those which are cracked, broken or missing; to make good the flashings and the like. Part of a garden wall falls down; repair is effected by building it up again with new mortar and so far as necessary, new brick and stone. Repair is restoration by renewal or replacement of subsidiary parts of a whole.'

"In the case of Heart of America Lumber Co. v. Belove, 28 Fed. Supp. 619, 620, Judge Merrill Otis for the Western District of Missouri states that an agreement to repair is an agreement to restore a thing to a sound or good state after decay, injury, dilapidation, or partial destruction. To the same effect is the case of Miller Hatcheries v. Buckeye Incubator Co., 41 F.(2d) 619 (CCA. Mo.). The word repair contemplates an existing structure or thing which has become imperfect by reason of the elements or otherwise, and to repair we restore or supply in the original structure that which is lost, destroyed or missing. *Fuchs* v. *City of Cedar Rapids,* 158 Iowa 392, 139 N.W. 903." (Emphasis *sic.*)